IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| PAULA DECORIA, Individually and T.D., a Minor, by and through her mother and natural guardian, PAULA DECORIA, | ) ) ) | Case No. CV-06-316-E-BLW |
| | ) | **MEMORANDUM** |
| Plaintiffs, | ) | **DECISION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF JEFFERSON, a Political Subdivision of the State of Idaho; CITY OF RIGBY, a Political Subdivision of the State of Idaho; STEPPS, INC., an Idaho Corporation; TERRI J. DODGE; OFFICER JOHN DOE 1; AND OFFICER JOHN DOE 2, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____) | | |

## INTRODUCTION

Defendants Jefferson County and Officer Titland have filed a motion for summary judgment.  The Court heard oral argument on November 5, 2007, and took the motion under advisement.  For the reasons expressed below, the Court will deny the motion as to Officer Titland but grant the motion as to Jefferson County.

## FACTUAL BACKGROUND

**Memorandum Decision and Order – Page 1**

In the early morning hours of October 20, 2005, Jefferson County Police Officer Mike Titland was called to a domestic disturbance between Walt Correia, age 18, and his mother.  Correia was on juvenile probation at the time for a conviction of battery, which involved the inappropriate touching of a 5-year old girl.  As part of his probation, he was required to undergo sex offender treatment. His probation officer, Terri Dodge, had a concern "about him being hypersexual or possibly addicted to sex." *See Deposition of Dodge* at p. 50.  At this time Dodge was aware that a few months earlier, on August 28, 2005, Correia had sex with a 17-year old female, and the police were investigating that as a rape. *See Affidavit of Stephens* at 003674

Officer Titland recalls that he telephoned Dodge on October 20, 2005, to ask her if Correia could temporarily stay at the home of a friend, Pinky Parsons. Parsons lived with his mother, Sela Parsons, and his nine-year old sister.  Neither Dodge nor Officer Titland knew the Parsons well enough to know all the residents of that house.

Neither Dodge nor Officer Titland recalled precisely what they discussed in that telephone call.  Officer Titland recalls that Dodge had asked him to check whether the Parsons would agree to Correia's placement there, and whether there were any minor females in the home.  He testified that he called Sela Parsons to

**Memorandum Decision and Order – Page 2**

ask for her permission, and also to ask if there were any minor females in the home.  He recalls Sela responding that there were no minor females in the home and that she would permit Correia to stay at her home for a time.  Correia was then transported to the Parson home.

Sela Parsons recalls getting a call from Correia and giving him permission to come over. She does not recall any call from Officer Titland or any other official, and claims that she received no warning whatsoever about Correia's sexual offender status.

Plaintiff T.D. originally saw Correia at her school and then later met with him at a skate park.  She was 13; he was 18.  She testified that on October 25, 2005, she went to the Parson home to visit Sela Parson and to use their telephone. There, she encountered Correia who raped her.[1]

Plaintiff T.D. and her mother Paula Decoria have sued Officer Titland, Probation Officer Dodge, Walt Correia, Jefferson County, and the entity providing the probation services, Stepps Inc.  The suit contains a claim under § 1983 along with state law claims.

Defendants Officer Titland and Jefferson County have moved for summary

---

[1]  There is no dispute in this summary judgment proceeding that Correia raped plaintiff T.D.

**Memorandum Decision and Order – Page 3**

judgment on all claims against them.  The Court will resolve the motion after first reviewing the standard of review.

## STANDARD OF REVIEW

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings.  *Id.*  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

**Memorandum Decision and Order – Page 4**

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

## 1. <u>Officer Titland</u>

Plaintiffs allege that Officer Titland created a danger by having Correia moved to the Parson home, and that the rape was a foreseeable consequence of that danger. They have sued Officer Titland under § 1983, among other claims, alleging that he deprived them of their constitutional rights.

The Due Process Clause protects a citizen's liberty interest in her own bodily security. *See, e.g., Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977). While the

state's failure to protect an individual against private violence does not generally violate the Due Process Clause, it can where the state action "affirmatively place[s] the plaintiff in a position of danger, that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Johnson v. City of Seattle,* 474 F.3d 634, 639 (9th Cir. 2007)(internal quotations omitted).[2] The officer must act with "deliberate indifference to [a] known or obvious danger." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006). "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

This danger-creation exception was applied in a suit by a rape victim claiming that the state exposed her to danger by selecting a known sex offender to work with her. *See L.W. v Grubbs*, 974 F.2d 119 (9th Cir. 1992). The Circuit held that the state had affirmatively exposed the victim to danger, and did so with

---

[2]  The case-law recognizes two exceptions to the general rule that a state's failure to protect an individual against private violence is not a due process violation: (1) the "special relationship" exception and (2) the danger-creation exception. *See Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058-59 (9th Cir. 1998). The plaintiffs here are proceeding solely under the latter exception. *See Plaintiffs' Brief* at p. 2.

**Memorandum Decision and Order – Page 6**

deliberate indifference to a known danger, *i.e.*, that he was a sex offender.[3]

*Grubbs* would clearly dictate a denial of summary judgment here if plaintiff T.D. had been a resident of the Parson home.  Should it make a difference that plaintiff T.D. was not a resident but merely a visitor?  Defendants argue that it does.  They insist that plaintiff T.D. was merely a member of the public-at-large who (1) did not meet Correia at the Parson home, (2) established a relationship with him elsewhere, and (3) voluntarily placed herself in danger on the day of the rape by seeking him out.

If the record conclusively supports this view of what occurred, defendants have a strong case for summary judgment.  A plaintiff who voluntarily places herself in danger as a member of the public-at-large cannot use the danger-creation exception.  *See Johnson,* 474 F.3d at 634 (affirming a grant of summary judgment to the police where plaintiffs "voluntarily placed themselves in the midst of the crowd that subsequently became unruly").

At the hearing on this motion, plaintiffs' counsel argued that even if plaintiff T.D. met Correia outside of the Parson home, those meetings would never have

---

[3]  At oral argument, and in the briefing, defendants seem to urge the Court to make a distinction between the state (1) taking a victim into danger and (2) bringing danger to the victim, with the latter triggering no § 1983 liability.  The Court disagrees.  In *Grubbs,* the state brought the danger to the victim – the state placed a sex offender in close proximity to the victim – and the Circuit found that actionable under § 1983.

**Memorandum Decision and Order – Page 7**

occurred but for Officer Titland's moving Correia closer in proximity to plaintiff T.D. It is true that Officer Titland moved Correia about 4.5 miles from his mother's home to the Parson's home – a distance estimated to be about a five minute drive. *See Titland Deposition* at pp. 26-27. The Court will assume, *arguendo*, that this move put Correia 4.5 miles closer to plaintiff T.D.

If simply moving a perpetrator several miles closer to a member of the public-at-large is enough to trigger the "danger-creation" exception to state liability, the exception effectively swallows the rule. Such expansion of the exception has no support in the Ninth Circuit case-law. *Cf., Wood v. Ostrander,* 879 F.2d 583, 590 (9th Cir.1989) (reversing summary judgment because the state action "distinguish[ed] [the plaintiff] from the general public and trigger[ed] a duty of the police to afford her some measure of peace and safety").

When read together, *Kennedy, Johnson*, and *Woods* impose boundaries around the danger-creation exception, allowing courts to assess the strength of each case individually. Here, Plaintiff T.D's case (against summary judgment) is strongest if she is a resident in the Parson home, and weakest if she is merely a member of the public-at-large, with no connection to the Parsons, who voluntarily sought out Correia.

The record indicates that she may fall somewhere in between. She states in

**Memorandum Decision and Order – Page 8**

her deposition that (1) she knew Sela Parson and the Parson children, *see Deposition of T.D.* at pp. 64-65; (2) she knew that Sela Parsons had a new baby, *id.* at p. 86; (3) she knew Sela Parson's employment and hours, *id.* at pp. 65, 86; (4) she had visited with the Parsons in their home prior to the day of the rape, *id.* at p. 65; (5) she visited the Parson home on the day of the rape to use the telephone and visit with Sela Parsons, *id.* at pp. 85-86; and (6) she had no expectation or intent of meeting Correia when she went to the Parson's home on the day of the rape, *id.* at pp. 85, 89.[4]

A reasonable juror could infer from this testimony that plaintiff T.D. was a friend of the Parson family and a frequent visitor in their home over an extended period of time. If it would be reckless for an officer to disregard whether minor females *resided* in a home before placing a known sex offender there, is it clear as a matter of law that an officer could not be reckless for disregarding whether minor females *were frequent visitors* in that home?

The Court cannot so find. No case-law supports such a finding. Common sense would dictate that frequent visitors would be more akin to residents than

_____

[4] While there are inconsistencies on this last point in her testimony, the Court cannot weigh credibility in a summary judgment proceeding. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).

**Memorandum Decision and Order – Page 9**

members of the public-at-large.  It entails no extra burden for the police to ask about the presence of minor females, residents and frequent visitors.  Hence, frequent visitors would be governed by *Grubb* rather than *Johnson*, and an officer's disregard of their presence, before placing a known sex offender in the home, might constitute deliberate indifference.

The defendants argue that Officer Titland had no idea that Correia was a sex offender.  There are questions of fact on this issue.  Officer Titland called Correia's probation officer, Terri Dodge, before placing Correia in the Parson's home because he knew Correia was on probation, and he discussed with Dodge whether there were any minor children in the home.  *See Deposition of Titland*, at p. 31.  Recalling his actions that night, Officer Titland testified that "when I talked to Sela [Parsons], there were nobody [*i.e.,* no minor children] there . . . .  I do recall that was one reason why it was okay to go over to Sela's." *Id.*  If Officer Titland knew that Correia should not have contact with minor children, a juror could reasonably infer that Dodge had told Officer Titland that Correia was a sex offender.

At the same time, Officer Titland's testimony is exonerating on another point – given Sela's response, he had no reason to know minor females would be residing in, or even visiting, the Parson home.  However, there are questions of fact on that issue as well.  Sela Parsons testified that Officer Titland never called her at

**Memorandum Decision and Order – Page 10**

all.  *See Deposition of Parsons* at p. 82.

Construing all inferences in favor of plaintiff T.D., a reasonable juror could conclude that Officer Titland knew Correia was a sex offender but failed to call Sela Parsons to determine whether minor females resided in, or frequently visited, the home.  Accordingly, there are genuine issues of material fact on whether Officer Titland violated plaintiff T.D.'s rights under the Due Process Clause.

Officer Titland responds that he is entitled to qualified immunity because the constitutional right he is alleged to have violated was not clearly established at that time. Yet *Grubb* – decided in 1992 – would have given "fair warning" to the police that they needed to provide full disclosure to a homeowner before placing a known sex offender there.  The testimony of Sela Parsons creates an issue of fact over whether Officer Titland even called her, and this precludes summary judgment on the qualified immunity issue.

The defendants argue that the state law claims against Officer Titland must be dismissed because plaintiffs failed to post the bond required by Idaho Code § 6-610.  Plaintiffs have, however, established their indigency and hence are not bound by the bond requirement.  *See Blackhawk v. City of Chubbuck*, 488 F. Supp. 2d 1097 (D.Id. 2006).

Finally, defendants argue that the state law claim of negligence must be

**Memorandum Decision and Order – Page 11**

dismissed against Officer Titland as there is no evidence to support it.  The discussion above, however, identifies the questions of fact on this claim and precludes summary judgment.

**2.      Jefferson County**

Plaintiffs assert in their briefing that Jefferson County is liable for its failure to train Officer Titland on how to supervise probationers, particularly sex offenders, placed in their care.  However, this claim cannot be found in plaintiffs' complaint, even reading that pleading in the most liberal manner.  Without that claim, plaintiffs have no cause of action against Jefferson County as it cannot be held vicariously liable for the conduct of Officer Titland.  *See Monell v. New York Dept. Of Social Services*, 436 U.S. 658 (1978).  The Court will therefore grant that part of defendants' motion seeking summary judgment on behalf of the County.

**3.      Motion to Strike Certain Pleadings**

Plaintiffs have moved to strike a Supplemental Affidavit of Blake Hall (filed with defendants' Reply Brief), and a portion of the Reply Brief pertaining to arguments regarding Idaho Code § 6-904A.  While it was not necessary for the Court to reach the issue concerning that Idaho statute, it is nevertheless improper to submit new arguments, and new affidavits, with a reply brief without justification and without Court approval.  *See Fort Hall Landowners Alliance v. BIA*, CV-99-

52-E-BLW (D. Id. July 9, 2007).   The Court can find no justification here and so will grant the motion to strike.

## 4.   <u>Motion to Strike Expert Witness</u>

Defendants move to strike plaintiffs' expert Jennifer Kerner.  Defendants claim that Kerner's opinions set forth in that report are inadmissible because it would not "assist the trier of fact to understand the evidence or to determine a fact in issue" under Rule 702.  In addition, defendants suspect that plaintiffs will attempt to introduce additional evidence beyond that contained in the report, and they seek to exclude any such evidence as well.

Within the deadline set by the Court, plaintiffs submitted an expert report of Kerner, a Licensed Clinical Professional Counselor.  In that report, Kerner expresses general opinions on the effects rape can have "on an adolescent female at age fourteen."  Kerner lists the statistical probability that an adolescent who has been raped will develop various problems such as depression, drug and alcohol abuse, and HIV.  Kerner also states that even when rape is treated, it can cause "poor self-esteem, sexual dysfunction and impaired sexual and personal relations, insomnia, anxiety . . . and other psychological symptoms that last into adulthood."  She concludes her report by asserting that "it is my opinion that . . . this young girl needs intervention and therapy immediately to address the issues arising from this

assault during this critical stage of development."

It is undisputed that Kerner had not actually examined plaintiff T.D. at the time she prepared this report.  Does the lack of an actual exam render her general opinions inadmissable because they would fail to "assist" the trier of fact under Rule 702?  The Advisory Committee Notes to Rule 702 state that

> it might be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case.  For example, experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case. [Rule 702] does not alter the venerable practice of using expert testimony to educate the factfinder on general principles.

In this case, Kerner's testimony regarding what course of treatment plaintiff T.D. should pursue is educational, and of some relevance even without an actual exam. Moreover, Kerner's testimony concerning the future prognosis of raped teens generally is likewise educational, and the lack of exam is not fatal because it is never clear what the future holds, even when a full exam has been performed.

Kerner could not, however, testify about the future prognosis of *plaintiff T.D. individually*, and Kerner could not attempt to apply any of the general statistics to *plaintiff T.D. individually*.  Such testimony would be excluded under Rule 37 because it goes beyond her expert report (and no deposition has been taken).  *See E.E.O.C. v. GLC Restaurants, Inc*., 2007 WL 30269 (D. Ariz. January

**Memorandum Decision and Order – Page 14**

4, 2007)(excluding expected trial testimony of psychologist linking general opinions on the impact of sexual predators on victims (testimony contained in his Rule 26 report) to the individual plaintiffs in the case (testimony not in his report)).

Plaintiffs' briefing gives some indication that Kerner has since examined plaintiff T.D.  It is not clear to the Court whether plaintiffs will try to introduce evidence of this examination at trial, or whether Kerner will offer any new opinions as a result.  If plaintiffs intend to go beyond the Rule 26 report previously submitted, the Court will expect plaintiffs to so notify defendants immediately so that defendants will have an opportunity to file a motion in limine that can be resolved prior to trial.  Because that issue is not now in front of the Court, no ruling on it will be made.  On the basis of the discussion above, the Court will deny the motion to strike Kerner's testimony on the assumption that her testimony will be strictly limited to the general opinions contained in her Rule 26 report.

## ORDER

In accordance with the terms of the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for summary judgment (Docket No. 33) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks dismissal of defendant Jefferson County. It is denied in all other respects.

**Memorandum Decision and Order – Page 15**

IT IS FURTHER ORDERED, that the motion to strike pleadings (Docket No. 47) is GRANTED.

IT IS FURTHER ORDERED, that the motion to strike testimony of Kerner (Docket No. 39) is DENIED.



DATED:  **December 3, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge